UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERRANCE BURTON,<br>　　*Plaintiff*,<br><br>　　v.<br><br>OUELLETTE, *et al.*,<br>　　*Defendants*. | No. 3:22-cv-00901 (VAB) |

INITIAL REVIEW ORDER

Terrance Burton ("Plaintiff"), currently confined at Robinson Correctional Institution in Enfield, Connecticut, has filed a Complaint *pro se* under 42 U.S.C. § 1983.

Mr. Burton names seven defendants, Lieutenant Ouellette, Correctional Officers John Doe 1–3, Warden Zelynette Caron, Deputy Warden Margarita Rios, and Commissioner Angel Quiros ("Defendants"). Mr. Burton asserts Eighth Amendment claims for unsafe conditions of confinement and cruel and unusual punishment, a Fourteenth Amendment due process claim, a negligence claim under the Federal Tort Claims Act, and state law claims for intentional conduct and assault and battery. Mr. Burton seeks damages as well as declaratory and injunctive relief.

For the reasons stated below, all federal claims relating to the June 30, 2021 incident are **DISMISSED** for failure to exhaust administrative remedies.

The claims against Warden Caron and Deputy Warden Rios are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

I.　**FACTUAL BACKGROUND**

On June 30, 2021, Mr. Burton alleges that he was a level 2 inmate housed at Robinson

Correctional Institution, a level 2/3 facility. Compl., ECF No. 1 at 9 ¶¶ 15–16 ("Compl."). Mr. Burton allegedly saw Officer Hart harassing inmates in response to an incident that had occurred the previous day. *Id.* ¶ 17. Officer Hart allegedly was throwing inmate property on the floor. *Id.* ¶ 18.

Officer Hart allegedly approached Mr. Burton and said he wanted to go through Mr. Burton's property. *Id.* ¶ 19. Mr. Burton alleges that he asked that a lieutenant be called, but Officer Hart refused. *Id.* ¶¶ 20–21. The stalemate allegedly continued for 25 minutes before Officer Hart left the unit. *Id.* ¶ 23.

Sometime later, Lieutenant Ouellette and Correctional Officers John Doe 1 and 2 allegedly entered the unit. *Id.* at 10 ¶ 24. As they approached, Mr. Burton allegedly moved back and asked them not to "walk up on" him as he did not trust them. *Id.* ¶ 25. Lieutenant Ouellette allegedly said that he only wanted to talk to Mr. Burton and asked what had happened. *Id.* ¶ 26. As Mr. Burton began to respond, Correctional Officer John Doe 1 allegedly moved into Mr. Burton's "personal space." *Id.* ¶ 27. Mr. Burton alleges that he took a step back and again asked Correctional Officer John Doe 1 not to approach too closely. *Id.* ¶ 28. Correctional Officer John Doe 1 allegedly stated that he was trying to get to an area beyond Mr. Burton. *Id.* ¶ 29. Mr. Burton allegedly repeated his request for the officers to maintain their distance, because he did not trust them, before continuing to tell Lieutenant Ouellette what had happened. *Id.* ¶¶ 30–31. Mr. Burton alleges that Correctional Officer John Doe 1 again moved closer, causing him to repeat his admonition. *Id.* at 11 ¶ 32.

Mr. Burton alleges that Correctional Officer John Doe 1 tackled him, causing Mr. Burton to fall and hit his head on the bunk ladder. *Id.* ¶ 33. Correctional Officer John Doe 2 allegedly pulled Mr. Burton by the legs to the floor, causing him to hit his head on the floor. *Id.* ¶ 34. Mr.

Burton alleges that Correctional Officers John Doe 1 and 2 began punching him in the face and kicking his right leg. *Id.* ¶ 35. While this was happening, Lieutenant Ouellette allegedly sprayed Mr. Burton in the face with a chemical agent. *Id.* ¶ 36. One of the officers allegedly pulled out some of Mr. Burton's hair while punching him in the face. *Id.* ¶ 37. Mr. Burton alleges that at no time during the assault did he resist the officers. *Id.* ¶ 38.

While the assault was occurring, Correctional Officer John Doe 3 allegedly entered the dorm with a hand-held video camera, but someone allegedly told him not to film the incident. *Id.* at 11–12 ¶¶ 39, 41. Mr. Burton believes that Correctional Officer John Doe 3 did not record the assault. *Id.* at 12 ¶ 42.

The officers allegedly escorted Mr. Burton to the restrictive housing unit ("RHU"). *Id.* ¶ 43. On the way, Lieutenant Ouellette allegedly told Correctional Officer John Doe 3 to record the escort and Officer Doe 3 allegedly turned the camera on. *Id.* ¶ 44. One of the defendant officers allegedly asked whether they were first taking Mr. Burton to the medical unit, but Lieutenant Ouellette allegedly said they would go directly to RHU. *Id.* ¶ 46.

Mr. Burton alleges that he requested medical attention for the pain in his head, hand, and leg the following day, July 1, 2021. *Id.* ¶ 47. He further alleges that the medical provider came to his cell, looked at him, and said there was nothing wrong with him. *Id.* ¶ 48. Mr. Burton alleges that he spent forty-six days in pain, fourteen of which were in RHU. *Id.* at 13 ¶ 49.

On July 12, 2021, Mr. Burton submitted inmate request forms to Warden Caron, Deputy Warden Rios, and the FOI Officer. *Id.* ¶ 51. The request to Warden Caron sought an investigation into the June 30, 2021 incident, while the other two requests sought preservation of surveillance footage. *Id.* at 20–22. Warden Caron allegedly did not respond to the request. *Id.* at 13 ¶ 52. Deputy Warden Rios referred the request addressed to her to Lieutenant Ouellette. *Id.* ¶

53. The FOI Officer allegedly did not respond. *Id.* ¶ 54.

Later in July 2021, an unknown officer allegedly approached Mr. Burton and threatened him about the incident with Officer Hart. *Id.* at 14 ¶ 58. The next day, while speaking to Lieutenant Ouellette on another matter, Mr. Burton alleges that he reported the threats. *Id.* ¶ 59. The following day, Mr. Burton alleges that he was transferred to Cheshire Correctional Institution, a level 4 facility, where he remained for six months. *Id.* at 15 ¶¶ 60–63.

On July 23, 2021, while at Cheshire Correctional Institution, Mr. Burton alleges that he sent a second inmate request to Warden Caron seeking preservation of the video surveillance footage of the June 30, 2021 incident and a response to his first inmate request. *Id.* ¶ 64. Warden Caron responded to the request on August 8, 2021, stating that the matter had been taken care of and noting that the video reference number had been provided to Mr. Burton. *Id.* ¶ 65; *id.* at 23 (response from Warden Caron). On August 16, 2021, Mr. Burton filed a grievance. *Id.* ¶ 66; *id.* at 24 (Inmate Grievance Form – Level 1). On October 16, 2021, he filed a level 2 grievance appeal. *Id.* at 16 ¶ 67; *id.* at 25 (Inmate Grievance Appeal Form – Level 2).

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents

and dismiss the complaint *sua sponte* if, inter alia, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)). In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)).

### III. DISCUSSION

The June 30, 2021 incident is the main focus of Mr. Burton's claims. He also alleges that Warden Caron and Deputy Warden Rios failed to properly respond to his requests and grievance.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear their case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 632–36 (2016) (applying the PLRA and noting that it "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions" (quoting 42 U.S.C. § 1997e(a))). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("In *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . rules that are defined not by the PLRA, but by the prison grievance process itself." (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006))); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly" (quoting *Woodford*, 548 U.S. at 90)). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (internal citation omitted)).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6 and may be found at portal.ct.gov/DOC/AD/AD-Chapter-9. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority (and that are not specifically identified in Sections 7 through 10 of Directive 9.6), the applicable remedy is the Inmate Administrative Remedy Procedure. Claims regarding conditions of confinement are subject to the Inmate Administrative Remedy Procedure.

The procedure involves an informal resolution attempt, a grievance, and a grievance appeal. Each step includes time for the prison official to respond—fifteen business days for the informal resolution attempt, and thirty days for the grievance and grievance appeal. *See* Administrative Directive 9.6(6) ("A.D. 9.6"). Each step also includes directions for proceeding to the next step if a response is not received. For example, if the inmate does not receive a timely response to his inmate request, he can file a grievance and explain why he did not include evidence of his attempt at informal resolution. *See* A.D. 9.6(6)(a)(ii)(2). With or without a response to the informal resolution attempt, the grievance must be filed within thirty days of the incident. *See* A.D. 9.6(6)(a)(ii)(4).

Exhaustion of administrative remedies is an affirmative defense on which the Defendants bear the burden of proof. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). However, the district court may dismiss a complaint for failure to exhaust administrative remedies where that failure appears on the face of the complaint. *See id*. at 214–15 (complaint may be dismissed *sua sponte* "when an affirmative defense . . . appears on its face" (internal citation and quotation marks omitted)); *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (acknowledging that "inmates are not required to

7

specially plead or demonstrate exhaustion in their complaints," but noting that "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement" (internal quotation marks omitted) (citing *Jones*, 549 U.S. at 215–16)).

Mr. Burton's constitutional claims deal with the actions of Defendants Ouellette and Correctional Officer John Does 1–3. He referred to this incident in his first request to Warden Caron, the request to which he did not receive a response. The incident occurred on June 30, 2021. Thus, he had thirty days, or until July 30, 2021, to file his grievance. Mr. Burton did not file his grievance until August 16, 2021, more than two weeks too late. *See* Compl. at 24 (Inmate Grievance Form – Level 1). The grievance was denied as untimely filed. *Id.* Mr. Burton could have timely submitted his grievance with an explanation that he had not received a response to his inmate request. In fact, he included this explanation in the grievance he did file.

Accordingly, because Mr. Burton failed to properly exhaust his administrative remedies, his federal claims relating to the June 30, 2021 incident will be dismissed.

### B. Failure to Respond to Requests and Grievance

Mr. Burton alleges that Warden Caron and Deputy Warden Rios did not properly respond to his inmate requests and grievances. Inmates have no constitutional entitlement, however, to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (finding that the plaintiff's claim "that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right" and noting that "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337

F.3d 217, 224 (2d Cir. 2003)).

In addition, Mr. Burton has no constitutional right to have his claims of improper conduct investigated. *See Davis v. Rinaldi*, No. 3:19-CV-504 (CSH), 2019 WL 7879729, at *7 (D. Conn, Oct. 31, 2019) ("Plaintiff does not have a protected liberty interest in having correctional officials investigate his complaints, through the grievance process or otherwise."); *see also Davila v. Messier*, No. 3:13-CV-81 (SRU), 2014 WL 4638854, at *8 (D. Conn. Sept. 17, 2014) ("[The inmate] does not have a procedural due process interest in having his claim investigated in a manner he deems appropriate . . . ."); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) ("[P]risoners do not have a due process right to a thorough investigation of grievances").

The inmate request to Warden Caron and the grievance were part of the administrative remedy process. Thus, any alleged impropriety in their handling does not give rise to a constitutional claim.

In response to the request to Deputy Warden Rios to have surveillance footage preserved, Mr. Burton was given the reference number for the video surveillance footage. *See* Compl. at 21. As his request was granted, there is no factual basis for a claim against Deputy Warden Rios.

Accordingly, the claims against Warden Caron and Deputy Warden Rios will be dismissed under 28 U.S.C. § 1915A(b)(1).

## IV.   CONCLUSION

All federal claims relating to the June 30, 2021 incident are **DISMISSED** for failure to exhaust administrative remedies.

The claims against Warden Caron and Deputy Warden Rios are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The Court declines to exercise supplemental jurisdiction over Mr. Burton's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that if a federal court dismisses all federal claims, it should decline to exercise supplemental jurisdiction over supplemental state law claims); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (citing cases).

The Clerk of Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of August, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE